UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT LONDON

CIVIL ACTION NO. 6:12-152-WOB-CJS

JOSEPH PETERSON                                                                           PLAINTIFF

v.                             REPORT AND RECOMMENDATION

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY                                         DEFENDANT

\* \* \* \* \* \* \* \* \* \*

Plaintiff Joseph Peterson brings this action under 42 U.S.C. § 405(g) challenging Defendant Commissioner's final decision denying his application for benefits under the Social Security Act. This matter has been referred to the undersigned for preparation of a Report and Recommendation under 28 U.S.C. § 636(b). (R. 3). At issue is whether the Administrative Law Judge (ALJ) erred in finding Plaintiff "not disabled" and, therefore, not entitled to benefits. As explained below, the ALJ's decision was supported by substantial evidence. It is therefore **recommended** that Plaintiff's Motion for Summary Judgment (R. 10) be **denied** and the Commissioner's Motion for Summary Judgment (R. 11) be **granted**.

I.      STANDARD OF REVIEW AND THE ADMINISTRATIVE PROCESS

In reviewing the decision of an ALJ in social security cases, the only issues before the reviewing court are whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Blakley v.*

*Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009).  The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Blakley*, 581 F.3d at 406. "The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Id*. (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)).  Thus, even if the evidence could also support another conclusion, the decision of an ALJ must stand if the evidence could reasonably support the conclusion reached.  *Id.* (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

In this case, Plaintiff must establish that he is disabled within the meaning of the Social Security Act in order to qualify for benefits.  42 U.S.C. § 423(a)(1).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

The Social Security Act requires the Commissioner to follow a five-step process when making a determination on a claim of disability.  *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (citing *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  First, a claimant must demonstrate that he is not currently engaged in "substantial gainful activity."  *Vance*, 260 F. App'x at 803 (citing 20 C.F.R. §§ 404.1520(b), 416.920(b)).  Second, if the claimant is not engaged in substantial gainful activity, he must demonstrate that he suffers from a severe impairment.  *Id*. at 803-04.  "A 'severe impairment' is one which 'significantly limits . . . physical or mental ability to do basic work activities.'"  *Id*. at 804 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)).  Third, if the claimant is not

2

performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets or equals a listed impairment located at 20 C.F.R. pt. 404, subpt. P, app'x 1, then the claimant is presumed disabled regardless of age, education or work experience. *Id.* (citing 20 C.F.R. §§ 404.1520(d), 416.920(d)). Fourth, the claimant is not disabled if his impairment(s) does not prevent him from doing his past relevant work. *Id.* Lastly, even if the claimant cannot perform his past relevant work, he is not disabled if he can perform other work which exists in the national economy. *Id.* (citing *Abbott*, 905 F.2d at 923). Throughout this process, the claimant carries the overall burden of establishing that he is disabled, but the Commissioner bears the burden of establishing that the claimant can perform other work existing in the national economy. *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

## II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is a fifty-year-old male who has a seventh grade education (A.R. 24, 56) and is unable to read or write but is able to perform basic computation such as making change (*id.* at 47). Plaintiff's alleged disability began on June 4, 2004 (A.R. 24), and he claims to be disabled because of nervousness, a learning disability, blindness in the left eye, lower back problems, shortness of breath, heart problems, and high blood pressure (*id.* at 96, 100). Plaintiff filed an application for supplemental security income on July 20, 2007, when he was forty-five years old. (*id.* at 15). The SSA denied Plaintiff's claim for supplemental security income on November 20, 2007 (*id.* at 96), and again upon reconsideration on January 15, 2008 (*id.* at 100). On December 3, 2008, ALJ William Newkirk held a hearing on Plaintiff's claim (*id.* at 62), and ultimately denied the claim on July 10, 2009 (*id.* at 82). The Social Security Appeals Council granted Plaintiff's request for review and remanded the case to another ALJ, William Zuber, for reconsideration. (*See id.* at 116). On

remand, ALJ Zuber conducted a hearing on May 17, 2010, at which Plaintiff testified and was represented by paralegal Mr. Kim Murphy. (*id.* at 15). Ms. Jane Hall, an impartial vocational expert (VE), also testified at the hearing. (*Id.*).

Following the hearing, the ALJ used a five-step sequential process to determine that Plaintiff was not disabled. (A.R. at 15-25). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful employment activity since July 20, 2007—the application date for supplemental security income. (*Id.* at 17).

At step two, the ALJ determined that Plaintiff had the severe impairments of borderline intellectual functioning (BIF), alcohol dependence, antisocial personality traits, left eye blindness, lumbar degenerative disc disease, and hypertension, as defined under 20 C.F.R. § 416.920(c). (A.R. 17). The ALJ noted that the record contained no independent medical evidence or history of medical treatment for any of these alleged impairments. (*Id.*). As a result, Plaintiff was referred to Martin Fritzhand, M.D. for an all-systems consultative evaluation, which was performed on September 13, 2007. (*Id.*). On November 16, 2009, after the case was remanded, W.R. Stauffer, M.D. conducted another medical evaluation. The results of this examination were similar to the previous test. (*Id.* at 18). Plaintiff underwent a mental status examination by Julie Joseph-Fox, M.A. on September 19, 2007. (*Id.* at 19). That test indicated that Plaintiff had a verbal IQ of 69, a performance IQ of 76, and a full-scale IQ of 70. (*Id.*). Ms. Joseph-Fox indicated, however, that Plaintiff "showed variable effort" in taking the test, and that therefore the test results—which showed mild to borderline functioning—"were thought to be conservative." (*Id.*).

At step three, the ALJ stated that Plaintiff did not have "an impairment or combination of impairments that meets or medically equals one of the listed impairments" under the applicable

4

Federal Regulations. (A.R. 21). The ALJ deemed it significant that Ms. Joseph-Fox found Plaintiff's IQ scores to be questionable because of Plaintiff's inconsistent effort during testing. (*Id.*). Moreover, there was nothing in the record to indicate that Plaintiff had a sufficiently low IQ prior to age twenty-two, and Plaintiff's functional adaptability was only moderately limited. (*Id.*). Accordingly, Plaintiff's mental condition did not satisfy 20 C.F.R. pt. 404, subpt. P, app'x 1 listing 12.05(C) for mental retardation. (*See id.*). The ALJ noted, however, that Plaintiff had moderate restrictions on daily living, social functioning, concentration, and persistence or pace. (*Id.* at 21-22).

At step four, the ALJ determined that Plaintiff had the residual functioning capacity (RFC) to perform light work as described in 20 C.F.R. § 416.967(b), subject to several limitations.[1] (A.R. 22). The ALJ determined that there was no evidence to support a finding of disability regarding Plaintiff's alleged leg and back pain. (*Id.* at 23). Plaintiff had not sought any medical treatment for this injury aside from taking over-the-counter medication (aspirin). (*Id.*). The ALJ added, "Failure to seek appropriate medical treatment and/or comply with referral for treatment is a reason to discount allegations of symptom severity and the disability alleged." (*Id.*).

At step five, the ALJ stated that Plaintiff was unable to perform any past relevant work as a construction laborer but was able to perform other jobs in the national economy. (*See* A.R. 24-25). The ALJ noted that the VE testified that Plaintiff's past relevant work as a construction laborer

---

[1]The ALJ stated in his opinion,
[Plaintiff] is limited to simple, unskilled, routine work allowing for a sit/stand option. He can never climb ladders, ropes, or scaffolds or operate foot controls with the left lower extremity. He can occasionally climb ramps or stairs, stoop, crouch, and kneel. [Plaintiff] requires jobs allowing for right monocular vision which does not require reading or writing. [Plaintiff] retains the ability to tolerate occasional contact with coworkers and supervisors. He has no ability to relate to the general public and must avoid exposure to unprotected heights and dangerous machinery.
(A.R. 22).

required medium exertion.[2] (*Id.* at 24). Since Plaintiff was now only able to perform light work, he was unable to perform his past relevant work. (*Id.*). The VE testified about whether jobs existed in the national economy for a person of Plaintiff's age, education, work experience, and RFC. (*Id.* at 24-25, 58). The VE indicated that Plaintiff would be able to work as an inspector/tester/sorter, and the ALJ agreed with this assessment. (*Id.* at 25). Accordingly, on September 9, 2010, the ALJ determined that Plaintiff was "not disabled" for social security purposes. (*Id.* at 12, 58).

Plaintiff appealed this decision, and on May 31, 2012, the Appeals Council upheld the ALJ's decision without a hearing, rendering ALJ Zuber's decision denying Plaintiff benefits the final decision of the Commissioner. (*See* A.R. 7). On July 25, 2012, Plaintiff filed this Complaint, contending that the ALJ's decision was erroneous and not supported by substantial evidence. (*See* R. 2). Plaintiff filed a Motion for Summary Judgment on November 19, 2012. (R. 10). The Commissioner also filed a Motion for Summary Judgment on December 6, 2012. (R. 11). The matter is now ripe for review and preparation of a Report and Recommendation.

### III.   ANALYSIS

Plaintiff argues that the ALJ erroneously determined at step three that Plaintiff was not mentally retarded under Listing 12.05(C) at step three of the ALJ's opinion and, by extension, that the ALJ relied on the VE's answer to an inaccurate hypothetical question in crafting the disability determination. A review of the record indicates that Plaintiff's arguments are misplaced. The ALJ properly determined at step three that Plaintiff was not mentally retarded because Plaintiff failed to produce any evidence that he was mentally retarded prior to age twenty-two, and no psychological

---

[2]Plaintiff testified that he worked part-time from approximately 1995 to 2005 cutting metal pipes and stacking lumber. (A.R. 36-37).

examiner has ever determined Plaintiff to be mentally retarded. The ALJ asked the VE an appropriate hypothetical question because the question took into account Plaintiff's RFC limitations. Accordingly, the ALJ's decision is supported by substantial evidence.

> A. **The ALJ properly determined at step three that Plaintiff was not "mentally retarded" under Listing 12.05(C) because Plaintiff did not produce any evidence that he was mentally retarded prior to age twenty-two, and no psychological examiner has ever determined Plaintiff to be mentally retarded.**

Plaintiff argues that the ALJ erred by not finding at step three that Plaintiff met the disability requirements for being considered mentally retarded under Listing 12.05(C) (*see* R. 10-1, at 5).

20 C.F.R. § 416.920(d) ("Evaluation of disability of adults, in general") states the following:

> When your impairment(s) meets or equals a listed impairment in Appendix 1. If you have an impairment(s) which meets the duration requirement and is listed in Appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, education, and work experience.

Appendix 1 is found at 20 C.F.R. pt. 404, subpt. P, app'x 1:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function
>
> . . . .

(formatting altered). A plaintiff carries the burden of showing that his impairment meets or equals the specific criteria of a listed impairment. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

7

Also, a plaintiff must produce evidence to support the existence of *all* of the requirements of a listed impairment; indeed, a lack of such evidence provides substantial evidence to support a finding that a plaintiff does not meet the listing. *See Hale v. Sec'y of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987) (Listing 1.05(C) context) (citing *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984)).

The Sixth Circuit discussed Listing 12.05(C) in *Foster*. *See* 279 F.3d at 348. There, the court said, "a claimant will meet the listing for mental retardation only '[i]f [the claimant's] impairment satisfies the diagnostic description in the introductory paragraph *and* one of the four sets of criteria . . . .'" *Id.* at 354 (quoting 20 C.F.R. pt. 404, subpt. P, app.'x 1 § 12.00(A)) (emphasis and alterations in original). The court then noted that the claimant in *Foster* had not produced evidence to support the requirements of the introductory section of Listing 12.05(C). *Foster*, 279 F.3d at 354-55. None of claimant's testing or evaluation occurred during the developmental period, claimant was in her forties when she was tested, and "the only evidence in the record pertaining to this issue is that [claimant] left school after completing the ninth grade." *Id.* at 355. Accordingly, the Sixth Circuit determined that substantial evidence supported the ALJ's determination that the claimant did not meet the Listing 12.05(C) requirements.

Turning to the present matter, the ALJ stated the following at step three of his analysis:

> The undersigned has considered Listing 12.05 based on reported IQ scores set forth in Ms. [Joseph-Fox's] report. However, she found the reliability of these scores to be questionable based on effort during testing. There is nothing in the record to confirm the presence of first prong level IQ scores during the developmental period (prior to age 22) and functional adaptability is only mildly limited. Thus, the record fails to establish the presence of listing level severity under 12.05.

(A.R. 21).

Plaintiff argues that the introduction to Listing 12.05(C) is satisfied because the results of a valid 2004 IQ test by Christopher Catt, Psy.D. (*see* A.R. 319) stated that Plaintiff's IQ was 66, and there is evidence of Plaintiff having deficits in adaptive behavior prior to age 22: he cannot read or write; he dropped out of school at seventh grade; and he was enrolled in special education classes during school. (*See* R. 10-1, at 7-8). According to Plaintiff, the ALJ erred by only taking into account the IQ test conducted by Ms. Joseph-Fox, which indicated that Plaintiff's IQ scores might be questionable because of an apparent lack of effort during testing. Instead, the ALJ should also have considered the 2004 IQ test. (*See* R. 10-1, at 4). The 2004 IQ test, coupled with Plaintiff's history of academic and intellectual difficulty and his present impediments, should have satisfied Listing 12.05(C).

Plaintiff's argument lacks merit under the *Foster* analysis. The introduction to Listing 12.05(C) contains two components: low intellectual functioning and low adaptive functioning, *both occurring before age twenty-two*. There is no evidence in the record that Plaintiff was mentally retarded before age twenty-two. While a person who, like Plaintiff, is illiterate, drops out of school, or who enrolls in special education classes *may* be mentally retarded, those circumstances do not establish that a person *is* mentally retarded. Only a psychological examiner can make this determination, and no such conclusion—either during the developmental period or afterward—exists in the record. Notably, neither Dr. Catt nor Ms. Joseph-Fox considered Plaintiff to be mentally retarded; rather, they indicated that Plaintiff had BIF. And it would be inappropriate for the ALJ to make a psychological determination on his own. *See Boulis-Gasche v. Comm'r of Soc. Sec.*, 451 Fed. App'x 488, 494 (6th Cir. 2011) (citing *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)).

Moreover, Plaintiff's school records indicate that he was enrolled in "SLD Reading" while attending Georgia public schools. (A.R. 230). The Court presumes that "SLD" refers to "specific learning disability"—the term used by the Georgia Department of Education. *See* GA. DEP'T. EDUC., SPECIAL EDUCATION SERVICES AND SUPPORTS: ELIGIBILITY CATEGORIES: SPECIFIC LEARNING DISABILITY, *available at* http://www.doe.k12.ga.us/Curriculum-Instruction-and-Assessment/Special-Education-Services/Pages/default.aspx. Having a specific learning disability is not synonymous with having a low IQ or having deficits in adaptive functioning, and mental retardation (or "intellectual disability") is an entirely separate classification for special education purposes. *See id.* (noting that, "[t]he term [SLD] *does not apply* to students who have learning problems that are primarily the result of . . . intellectual disabilities . . . ." (emphasis added)). Therefore, it does not follow that Plaintiff's status as being enrolled in SLD classes at school means that he meets the standard for being mentally retarded during the developmental period.

In sum, none of Plaintiff's testing or evaluation occurred during the developmental period. In finding Plaintiff "not disabled" at step three, the ALJ appropriately took into consideration Ms. Joseph-Fox's psychological evaluation, which accorded with Dr. Catt's conclusion that Plaintiff has BIF—*not* mental retardation. The ALJ's decision was based on substantial evidence. The Sixth Circuit, under comparable circumstances in *Foster*, upheld the ALJ's determination that the claimant had not satisfied the first prong of Listing 12.05(C). Here, this Court should do the same.

    **B.**    **The ALJ asked the VE an appropriate hypothetical question because the question took into consideration the limitations set forth in the RFC.**

Finally, Plaintiff argues in a footnote that the ALJ's hypothetical question to the VE was an inaccurate reflection of Plaintiff's limitations. (R. 10-1, at 5 n. 1). Instead, the ALJ should have based his opinion on the "more accurate hypothetical" propounded by Plaintiff's counsel. (*See id.*).

The ALJ asked the following hypothetical question:

> I'd like you to assume a hypothetical individual with the same age, education and work history as [Plaintiff]. This individual would be capable of simple unskilled routine tasks at the light exertional level with an option to sit or stand every 30 to 45 minutes. This individual would be capable of occasional climbing of ramps and stairs, occasional stooping, crouching, crawling, and kneeling. No climbing of ladders, ropes or scaffolds. No use of the left lower extremity for foot controls. This individual would be limited to tasks that wouldn't require more than monocular vision on the right side. No more than occasional interaction with coworkers and supervisors. No contact with the general public. No exposure to unprotected heights or dangerous machinery. No tasks require any reading or writing.
>
> Would there be any jobs available for such an individual?

(A.R. 58). The VE answered yes, Plaintiff was qualified for work as an inspector, tester or sorter. (*Id.*). The VE also said that these positions would be available if the hypothetical were reduced to the sedentary exertional level, as would the positions of hand packager and hand laborer. (*Id.*).

Plaintiff's counsel wished to add two additional limitations to the hypothetical. First, "[switch] the vision from just a restriction on monocular vision to a restriction on no fine visual acuity." (A.R. 59). Under this scenario, the VE indicated that the limitation would limit the hand packager and hand laborer jobs by fifty percent. (*Id.*). Second, counsel asked the VE what would happen if the hypothetical worker had to lie down at work, in addition to just alternating between sitting down and standing. (*Id.* at 60). Under this scenario, the VE testified that the hypothetical worker would not be able to find work. (*Id.*).

The ALJ properly based his opinion on the first hypothetical, taking into consideration Plaintiff's RFC limitations, including left lower extremity pain, monocular vision, and antisocial behavior. Therefore, the ALJ's hypothetical was an accurate reflection of Plaintiff's limitations.

In sum, the ALJ's determination was supported by substantial evidence because he took into consideration all of the Plaintiff's relevant, credible mental and physical limitations. It is therefore **recommended** that the decision of the Commissioner be **affirmed.**

IV.     **CONCLUSION AND RECOMMENDATION**

As explained above, the ALJ's decision is supported by substantial evidence and should be affirmed. Accordingly, **IT IS RECOMMENDED** that:

1. The Commissioner's decision be found to be supported by substantial evidence and therefore **affirmed;**

2. Plaintiff's Motion for Summary Judgment (R. 10) be **denied;**

3. Defendant's Motion for Summary Judgment (R. 11) be **granted;** and

4. This matter be **stricken** from the active docket of the Court.

Specific objections to this Report and Recommendation must be filed within **fourteen days** of the date of service or further appeal is waived. 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 728 F.2d 813, 815 (6th Cir. 1984), *aff'd*, 474 U.S. 140 (1985). A party may file a response to another party's objections within **fourteen days** after being served with a copy thereof. Fed. R. Civ. P. 72(b).

Dated this 5th day of February, 2013.



Signed By:
*Candace J. Smith*
**United States Magistrate Judge**

G:\DATA\social security\12-152 Peterson R&R.wpd